http://www.va.gov/vetapp16/Files3/1626410.txt

Citation Nr: 1626410 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 07-38 727 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to service connection for residuals of a left foot sprain, claimed as a left foot injury. 
 
2. Entitlement to service connection for status post total right knee replacement, to include as secondary to the residuals of a left foot sprain. 
 
3. Entitlement to service connection for status post total left knee replacement, to include as secondary to the residuals of a left foot sprain.

REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States

WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

R. Erdheim, Counsel

INTRODUCTION

The Veteran served on active duty from December 1967 to December 1989.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a September 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. In February 2012, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge. 

The Board issued a decision denying the claims in May 2015. The Veteran appealed that decision to the Court of Appeals for Veterans Claims (the Court). In April 2016, the Court granted a joint motion for remand (JMR), and vacated and remanded the Board's decision.

FINDINGS OF FACT

1. There has been no demonstration by competent medical, or competent and credible lay, evidence of record, that the Veteran has residuals of a left foot sprain (claimed as a left foot injury) casually related to, or aggravated by active service. 
 
2. Status post total right and left knee replacements were not affirmatively shown to have been present during service; arthritis of either knee, as a chronic disease was not manifested to a compensable degree within one year from the date of separation from service; and neither the right nor left knee replacements are casually related to a service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for establishing service connection for residuals of a left foot sprain have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 5013, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102 , 3.303, 3.304, 3.307, 3.309 (2015).
 
2. The criteria for establishing service connection for status post total right knee replacement have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 5013A, 5107 (West 2014); 38 C.F.R. §§ 3.102 , 3.159, 3.303, 3.304, 3.307, 3.309, 3.310 (2015).
 
3. The criteria for establishing service connection for status post total left knee replacement have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 5013A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.307, 3.309, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). There has been substantial compliance with the April 2014 and January 2015 remands. With regard to the January 2015 remand and resulting February 2015 VA examination addendum, the Board specifically finds that there has been substantial compliance. The January 2015 remand requested that a VA examiner provide an opinion as to the etiology of the Veteran's left foot disability, and such opinion was obtained in February 2015. While the February 2015 opinion is primarily based upon the conclusions reached on May 2014 VA examination, such does not detract from a finding that there has been compliance with the remand instructions. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). Furthermore, the May 2014 VA examination opinion was based upon a review of the record, to include an interview with the Veteran and a full examination. Moreover, the opinion offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). To the extent that there is duplication of the May 2014 and February 2015 VA opinions, such is moot as the opinions are entirely sufficient to decide the Veteran's claim and there is no prejudice to the Veteran by proceeding with adjudication of the appeal.

 II. Analysis

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of the following: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet. App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table).

Service connection may also be established by chronicity or continuity of symptoms for certain chronic conditions. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Arthritis is listed as chronic diseases. If a veteran served 90 days or more on active duty, service incurrence will be presumed for certain chronic diseases, such as arthritis, when it is manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1110, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

In adjudicating a claim, the Board must assess the competence and credibility of the veteran. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 368-69 (2005). The Board also has a duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). 

Once the evidence is assembled, the Board is responsible for determining whether the preponderance of the evidence is against the claim. If so, the claim is denied; if the evidence is in support of the claim or is in equal balance, the claim is allowed. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran claims that he is entitled to service connection for residuals of a left foot injury because the initial injury was incurred during service. He also contends that his bilateral total knee replacements are the result of the left foot injury. Specifically, he claims that in September 1970, he injured his left foot playing football. He feels that this injury consisted of torn tendons, which over the years resulted in his left foot collapsing and the current left foot problems, which in turn caused bilateral knee problems. 

The service treatment records confirm that in September 1970, the Veteran was seen for left foot edema due to a football injury. It was noted that X-ray studies were negative. The Veteran was given a bandage wrap and crutches. He was instructed to return as needed. All subsequent treatment records are silent with respect to the left foot. The report of a February 1986 periodic physical examination noted several findings and complaints, but nothing regarding the left foot or either knee. A July 1989 record noted complaints of knee pain for 3 months. The impression was probably small tear in posterior portion of left medical meniscus. The Veteran was "basically asymptomatic" at that time. 

The post-service medical evidence includes a February 1990 VA examination which notes that the Veteran had a normal gait.

Medical records from Tyndall Air Force Base Family Practice Raptor Clinic dated in 2004 and 2005 refer to the Veteran's feet and knee problems. Records from Dr. W. and Dr. G., dated in 2005, and records from Dr. T., dated in 2006, discuss the Veteran's bilateral knee problems.

A June 2004 Tyndall Air Force Base Family Practice Raptor Clinic note, written by B.T., indicates that the Veteran was following up from Dr. R. (orthopedics) for concerns of "pes planus secondary to probable chronic rupture of the posterior tibial tendon." It was noted that Dr. R. was concerned that the foot problem is creating the knee pain problem. This was the same concern of the physical therapist at "GC Hospital." The prior medical history noted a 30 year old football injury which caused torn ligaments and tendons of the right foot. Examination revealed that the left foot had lost its arch significantly, and that the foot pronates. There was a concave curvature of the distal left tibia. 

A September 2004 Raptor Clinic note indicates that the Veteran had bilateral foot pain, for which he was seeing Dr. J. He stated that his right foot pain is very intense now. A November 2004 Raptor Clinic note indicates that the Veteran has bilateral ankle and foot pain with pes planus/plantar fasciitis, and posterior tibial tendonitis due to ligament-tendon dysfunction associated with increased pronation/pes planus. The Veteran received an injection in his right foot a month earlier, but the pain has exacerbated since then. 

A January 2005 Family Practice, Raptor Clinic, treatment note, signed by B.T., notes that the Veteran was seen for complaints of bilateral knee pain due to severe degenerative joint disease. A January 2005 Raptor Clinic radiological examination report notes gradual worsening left knee pain, status post receiving orthotic devices for over pronation. A January 2005 Raptor clinic order request for physical therapy notes that the Veteran's bilateral knee pain seems to be related to his new orthotic devices he received about two months ago. 

A March 2005 treatment record from J.P.G., M.D., notes that left knee pain began after getting physical therapy after back surgery. Osteoarthritis of the bilateral knees was diagnosed. 
An April 2005 Raptor Clinic order request notes bilateral over pronation and pes planus on the right foot, and off-angulation on the left foot. He had initial improvements with orthotics and then started developing left knee pain. 

An August 2005 Family Practice Raptor Clinic request notes that the Veteran has been using orthotics, which have improved his lower leg muscle and bone pain. It was noted that he does not have pain in his medial thighs as before. 

An October 2005 treatment record from Family Practice Raptor Clinic, and signed by T.H., notes that the ankles and feet showed no abnormalities. Gait and stance were normal, as was balance. 

A November 2005 Raptor Clinic order request notes that the Veteran required continued evaluation and treatment for his bilateral foot pain (including right foot bunion) and chronic onychomycosis, which had failed systemic Lamisil therapy. 

A January 2006 medical record from Dr. T. indicates that there was no specific injury to the right knee, but right knee symptoms began gradually about three years earlier. In April 2006, the Veteran underwent a total right knee replacement for degenerative joint disease of the right knee. An August 2006 medical record from Dr. T. indicates that there was no specific injury to the left knee, but left knee symptoms began gradually about five years earlier. The Veteran indicated in a statement received with his VA Form 9, that he underwent a total left knee replacement in September 2006. A December 2006 health record from Raptor Clinic notes that bilateral knee examination was normal. 

An undated letter from S.R.J., D.P.M., notes that the Veteran was initially seen in July 2004. The Veteran was noted to have had trauma about 30 years earlier to the left midfoot, with disruption of ligaments or sprain. He currently has instability in that region with localized fluctuance consistent with synovitis and osteoarthritis, secondary to past trauma. Treatment has been directed at conservative care, including orthotics and shoe modifications. 

A letter received in November 2005 from S.R.J., notes that the Veteran injured his foot in the early 1970s. There is evidence of arthritic changes in the region of his injury and this has altered his gait. This is due to the failure of treatment at the time of injury, such as appropriate immobilization bracing, orthotics, and/or shoe modifications. The Veteran currently has osteoarthritis in his knees, which in part would likely be a result of biomechanical changes. 

The report of an August 2007 VA examination notes that, after reviewing the Veteran's medical records and examining the Veteran, it is less likely than not that the current left foot problems (posterior tendon rupture and pes planus) were caused by the in-service football injury. The rationale given is that the Veteran indicated, and the records show, that after his visit to the clinic in September 1970, he did not have any other issues with his left foot until a few years ago. The examiner also indicated that the precise cause leading to the knee replacement cannot be said without resorting to mere speculation. This is because other than a 1989 note referring to a left knee sprain, there was no other evidence of knee pain in the medical records and the Veteran stated that he had no knee problems before 2003. 

The Veteran was afforded a VA examination for his left foot and bilateral knee claims in May 2014. At that time, and again in February 2015, the examiner reviewed the Veteran's in-service left foot sprain, which he concluded resolved without sequelae. The examiner opined that the Veteran's left foot conditions, which included left foot calcaneal osteotomy, left foot degenerative arthritis, and left foot plantar heel spur were all less likely than not caused by, or related to, the Veteran's military service, to include his September 1970 in-service left foot sprain. As rationale, the examiner pointed out that examinations of the left lower extremity in service after the left foot sprain were normal and the Veteran participated in full duty. Thus, in the examiner's opinion, the acute injury (the left foot sprain) resolved without sequelae. The calcaneal osteotomy was not treated in service and is a distinct diagnosis occurring decades after an acute, self-limiting, resolved left foot injury. The degenerative arthritis left foot and plantar heel spur were not treated in service and not noted on X-ray in 2007. The examiner reviewed the private opinion from Dr. S.R.J. and took issue with the finding that there was any persistent regional instability or sequela to the in-service acute left foot sprain, as the data strongly showed complete resolution of this injury without sequelae.

The physician also, in addressing the medical question related to whether the Veteran's bilateral knee replacements were secondarily-related to a current left foot disorder, opined that it was less likely as not that either the Veteran's left total knee replacement or right total knee replacement was caused by, or related to, any current foot disorder. The physician attributed the necessity to replace the Veteran's knees to bilateral degenerative joint disease. The physician also opined that the Veteran's bilateral knee disorders were not aggravated by any current left foot disorder. To this, the physician commented that the bilateral knee disorders were not worsened beyond their natural progression by the Veteran's military service, to include his in-service left foot sprain. In supplying these findings, the VA physician commented that it was his opinion that the findings supplied by the above-mentioned physician, S.R.J., were essentially speculative in nature and were not supported by the preponderance of medical literature. He added that as to the question of whether the Veteran's foot problems were causing his knee problems, these findings also appeared speculative in nature. 

Review of records on file obtained from the Social Security Administration (SSA) includes a June 2007 Disability Determination and Transmittal form which shows a primary diagnosis of osteoarthritis and allied disorders, and a secondary diagnosis of disorders of the back. The disability was reported to have begun in April 2006. 

The preponderance of the competent medical, or competent and credible lay, evidence of record is against the Veteran's claim seeking service connection for a left foot disorder on both a direct and presumptive basis. 

As noted above, while the Veteran was seen on one occasion in service for left foot edema, in September 1970, no other treatment followed. In-service X-ray findings were negative. He separated many years later, in 1989. The Veteran has current post-service diagnoses relating to his left foot. These include pes planus, plantar fasciitis, and arthritic changes (i.e., osteoarthritis). However, there is no probative or competent evidence relating any of these conditions to service. See May 2014 VA examination, and February 2015 addendum reports, which both include negative opinions concerning this claim, based on the finding that the in-service left foot sprain was resolved without residual. S.R.J.'s statement in support of the claim includes the assumption that the Veteran had trauma to the left midfoot with disruption of ligaments or sprain. The basis of that assumption is unclear as the contemporaneous treatment records note only edema and negative x-rays. There is also no evidence of arthritis affecting the left foot within one year of separation from service. 

The Veteran was diagnosed with left foot-related problems in 2004; about 15 years after service. The lapse of time between service separation and the earliest documentation of current disability is a factor for consideration in deciding a service connection claim. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 2000). 

The Veteran is competent to relate his symptoms, such as pain. However, he has not been shown to possess the requisite training or credentials needed to render a competent opinion as to medical diagnosis or causation in this case, especially in light of initial diagnosis many decades after service. The Veteran's opinion does not constitute competent medical evidence and lacks probative value. Kahana v. Shinseki, 24 Vet. App. 428 (2011).

The most probative evidence of record is against a finding that the Veteran has a left foot disability causally related to service. Thus, service connection is denied. Gilbert, 1 Vet. App. at 54.

Next, the preponderance of the competent medical, or competent and credible lay, evidence of record is against the Veteran's claims of service connection knee disabilities on direct, presumptive and secondary bases. 

Service treatment records include complaints regarding the left knee but include a July 1989 follow up finding that the Veteran was "basically asymptomatic" at that time. The Veteran himself reported to the August 2007 VA examiner that he had no knee problems before 2003. Thus, the left knee complaints in service were resolved. There were no in-service findings or complaints regarding the right knee. 
The Veteran does not argue and there is no evidence either contemporaneous with or after service that any of the two currently-claimed disorders was noted in service, that is, observed, and the principles of service connection pertaining to chronicity and continuity of symptomatology under 38 C.F.R. § 3.303(b) do not apply.

On the question of whether service connection may be granted on the basis that the claimed disability was first diagnosed after service, considering all the evidence, including that during and after service, under 38 C.F.R. § 3.303(d), the Veteran does not argue in his pleadings, namely, his application, notice of disagreement, or substantive appeal and the record does not contain competent evidence, lay or medical, that links either left or right knee degenerative joint disease (and status post bilateral knee replacements) to an injury, disease, or event in service. In the absence of competent evidence suggesting such an association, and in the absence of credible evidence of continuity of symptomatology, there is no possible association with service, and VA is not required to further develop the claims on the theory of direct service connection under 38 C.F.R. § 3.303(d), as noted above.

After service, degenerative joint disease of the knees was first diagnosed in 2005. Obviously, this is well beyond the one-year presumptive period following separation from active service in 1989 for arthritis, as a chronic disease under 38 U.S.C.A. § 1112 and 38 C.F.R. §§ 3.307, 3.309. 

Also, the Veteran's primary assertion as to being granted service connection for his bilateral knee status post total knee replacements essentially relies on his claimed left foot disorder being service connected. For the reasons explained above, the Veteran is not service-connected for residuals of a left foot sprain, claimed as a left foot injury. Therefore, entitlement to secondary service connection for these bilateral knee disorders secondary to a left foot injury must also be denied as a matter of law. Sabonis v. Brown, 6 Vet. App. 426 (1994).

Accordingly, a preponderance of the evidence is against service connection for either status post total right knee replacement or status post total left knee replacement on the basis of any of the above theories.

As the preponderance of the evidence is against the claims, service connection is denied. Gilbert, 1 Vet. App. at 54.

ORDER

Entitlement to service connection for residuals of a left foot sprain, claimed as a left foot injury, is denied. 

Entitlement to service connection for status post total right knee replacement, to include as secondary to the residuals of a left foot sprain, is denied. 

Entitlement to service connection for status post total left knee replacement, to include as secondary to the residuals of a left foot sprain, is denied. 

____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs